IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

UNITED STATES OF AMERICA

v.   Criminal No. 5:20mj2

KEITH ALLEN CONLEY, et al

### AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, William S. Foster, Task Force Officer of the Drug Enforcement Administration, Winchester Resident Office (RO), being duly sworn, state the following:

1. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of violations of federal offenses, and to make arrests.

2. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") and have been so since December 19, 2018. Prior to joining the DEA, I was assigned to the Northwest Virginia Regional Drug and Gang Task Force from April 2013 until May 2018. During my time with the DEA and local task force, I have directed or assisted in investigations concerning criminal violations of Title 21 of the United States Code.

3. I have received training in all areas of narcotics investigations, including search and seizure laws and statutes pertaining to enforcement of the Controlled Substances Act.

4. I am submitting this affidavit in support of a criminal complaint and a warrant for the arrest of Keith Allen CONLEY, Kelley Evelyn DUDLEY, and Gary Wayne WOODSON for conspiracy to distribute a controlled substance with intent to distribute in violation of Title 21, United States Code, Section 846.

5. This affidavit is being submitted for the limited purpose of securing a complaint and arrest warrant; therefore, this affidavit does not contain every fact that I, or other law enforcement offices, have learned during the course of this investigation.

6. The information contained in this affidavit is based upon information provided by a confidential informant, my personal knowledge of the evidence in this case, a review of related reports, other law enforcement investigations, as well as my training, experience,

1

and the combined training and experience of other law enforcement officers with whom I have had discussions.

7. On December 7, 2018 Detective Daniel Long of the Harrisonburg Police Department and other members of the RUSH Drug Task Force supervised a controlled purchase of methamphetamine utilizing a Confidential Informant ("CI"). The CI has worked with law enforcement as a paid CI since June 2017 and to date is in good standing.

8. Prior to the controlled purchase, law enforcement searched the CI for money or contraband. None were found. Law enforcement provided the CI with $120 in prerecorded funds and a digital recording and transmitting device.

9. According to the CI, which is corroborated by the audio recording and the observations of police officers, the CI walked to 340 N. Mason Street in Harrisonburg, Virginia, which is located in the Western District of Virginia. The CI met Gary Wayne WOODSON at that location, where WOODSON got out of a vehicle and provided the CI with a white crystal material in exchange for money. WOODSON then left in the same vehicle, and the CI walked away from the location. A forensic scientist with the Virginia Department of Forensic Science later determined the white crystal material was approximately .307 grams of methamphetamine.

10. On December 17, 2018, Detective Long and the RUSH Drug Task Force again conducted a controlled purchase of methamphetamine from WOODSON. On that date at approximately 11:57 a.m., law enforcement searched the CI for money or contraband. None were found. Law enforcement provided the CI with $360 in prerecorded funds and a digital recording and transmitting device. A few minutes later, the CI met with WOODSON in the parking lot of 450 N. Mason Street in Harrisonburg, which is located in the Western District of Virginia.

11. According to the CI, which is corroborated by the audio recording and the observations of police officers, the CI and WOODSON walked to the north end of the parking lot, where WOODSON provided the CI with multiple baggies of white crystal substance in exchange for money. A forensic scientist with the Virginia Department of Forensic Science later determined the white crystal material was approximately 3.97 grams of methamphetamine.

12. After this controlled purchase, law enforcement continued to observe WOODSON walk into and then out of a nearby store before getting into a taxi cab with an unknown female. Law enforcement conducted a traffic stop on the taxi cab to arrest WOODSON. During the traffic stop, law enforcement located the $360 in prerecorded funds used earlier that day, an additional 4.7 grams of suspected methamphetamines, and a digital scale from WOODSON.

13. After arrest, WOODSON waived his Miranda rights twice and answered questions from law enforcement. Among other statements, WOODSON stated that his supplier was a white male named Keith LNU and his girlfriend named Kelley LNU and that WOODSON

2

had purchased approximately five 8-balls[1] to 1 ounce of methamphetamines twice weekly from Keith for the last couple of months. WOODSON stated that Keith and Kelly were staying at a local Super 8 Motel.

14. Later that same day, on December 17, 2018, WOODSON agreed to participate in a controlled purchase from Keith and Kelly, later identified as Keith Allen CONLEY and Kelley Evelyn DUDLEY, in exchange for some form of consideration in any subsequent distribution of methamphetamine case against WOODSON.[2] Before the purchase, law enforcement searched WOODSON for money or contraband. None were found. Law enforcement provided WOODSON with $800 in prerecorded funds and a digital recording and transmitting device.

15. WOODSON traveled to Room 304 of the Super 8 Motel, located at 3330 S. Main Street, Harrisonburg, VA, which is in the Western District of Virginia. Inside the hotel room were CONLEY, DUDLEY, two minor children, and a dog. WOODSON handed DUDLEY the prerecorded funds, discussed drugs and money with her, and received multiple clear baggies of an off-white rock-like substance from DUDLEY. CONLEY was present and laying on the bed. WOODSON then left the hotel room and returned to a prearranged location, where he handed law enforcement the multiple baggies from DUDLEY. The multiple baggies from DUDLEY contained approximately 12 gross grams of methamphetamine, which WOODSON had sought to purchase.[3]

16. Based on this information, law enforcement obtained a state search warrant for Room 304 of the Super 8 Motel. When executing the search warrant, inside the motel room officers encountered CONLEY, DUDLEY, and two minor children. CONLEY and DUDLEY were detained by officers. During the search warrant, officers seized approximately 21 gross grams of what appeared to be methamphetamine. The suspected methamphetamine located in the motel room was broken down into 10 separate baggies, in different increments. The baggies were located in a plastic tray that contained 6 individual slots. Each slot was labeled. The slots were labeled "G," "1/2 G," "1/2 B," "B," "20's," and "misc personal." Based on my training and experience, "G" stands for "gram" and "B" stands for "Ball," which represents different drug weights. In addition, officers also located a clear baggie of suspected methamphetamine on the floor by the sink, a plastic box containing various pills, and a green jar containing green plant materials in a tool box. The DEA's Mid-Atlantic laboratory later tested the suspected methamphetamine seized in the hotel room and found it to be approximately 13.44 grams of methamphetamine with 98-100 percent purity.

---

[1] An "8-ball" is approximately 3.5 grams. One ounce is approximately 28 grams.

[2] On December 31, 2018, law enforcement arrested WOODSON for distributing methamphetamine in contravention of his CI agreement with the task force.

[3] The suspected methamphetamine was later tested by DEA Mid-Atlantic laboratory and found to be 8.11 grams of 100 percent pure methamphetamine.

3

17. During the search, officers also seized a loaded .380 caliber pistol, digital scales, packaging materials, and $3,838 cash. The cash included the $800 in prerecorded funds that was used for the controlled purchase earlier that night. The money from the controlled purchase was located in DUDLEY'S back left pants pocket. The handgun, a set of digital scales, packaging materials, and $2,830 cash was located in a locked tool box. The key to the lock was located clipped to the pants being worn by CONLEY. (A subsequent DNA test by the Virginia Department of Forensic Science found CONLEY's DNA on the firearm.)

18. After arrest, Detective Long advised DUDLEY of her Miranda rights. DUDLEY waived her rights and agreed to speak with Detective Long. DUDLEY advised Detective Long that she has known CONLEY for the past five years and that he has been selling methamphetamine since she has known him, except when he was in jail; that she did not sell drugs but simply collected money from people; and that she assumed the money was for drugs. DUDLEY stated that the last time they had sold drugs was December 16, 2018. DUDLEY also stated that the firearm belonged to her, although CONLEY knew of and had handled the weapon.

19. After the arrest of the defendants, the two minor children were placed with Social Services. Both children tested positive for methamphetamines.

20. Based on the aforementioned facts, probable cause exists that in December 2018, in the Western District of Virginia, CONLEY, DUDLEY, and WOODSON conspired to distribute methamphetamine, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

I declare under penalty of perjury the foregoing to be true and correct to the best of my knowledge and belief.

_____
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this ___14th___ day of January 2020.

_____
JOEL C. HOPPE
United States Magistrate Judge

4